May it please the Court, my name is Ryan Norwood. I represent Mr. Comstock. I'd like to reserve about two minutes of my time for rebuttal. The entire issue at Mr. Comstock's trial was whether the ring he possessed was stolen or whether it was lost. Based on the owner's testimony, the prosecutor emphatically argued that the only possible conclusion was that this ring had to have been stolen and not lost. All the while, the prosecutor knew perfectly well that the ring could have been lost because the owner himself had told her that before the trial. The prosecutor's suppression of his material statement was a Brady violation and was unreasonable for the State courts to hold otherwise. Nevada law, for purposes of prosecuting the crime of receiving stolen property What is it that you think was withheld? What is it that you're looking for? Do we think that there's a tape? Do we think that there's some notes? The State in its opposition was really quite specific about the timing of this. That it occurred after the pretrial, but before the trial began. And that they talked to the witness then. And they were very specific about how he responded to certain questions about washing his motorcycle. So, but we were never told what the form of that was. Do you know what you're looking for? I don't know if they actually wrote it down. But the prosecutor says in that pleading that you're referring to, that he specifically told her at some point before the trial that he might have lost his ring while he was cleaning or washing his motorcycle. It's not just that, but you're given sort of demeanor evidence. He paused thoughtfully and responded that, well, anything is possible, and it's possible and so on. So somebody's got either some very, very specific notes or somebody's got a tape. Well, if there was that tape, we've never seen it. But you don't know. You don't know precisely. At this point, you don't know precisely what you're looking for. I mean, the problem is that the State court never bothered to sort this out exactly. I mean, this is. I mean, that statement was not made under oath, right? That was just what she said in her opposition of the Brady motion. It was not under oath. It was not a declaration or anything. That's my understanding. It was just what she said. That's correct. I mean, this originally came. The district court and the State supreme court quoted some piece of it, but didn't make any findings or direct a hearing to make any findings. Correct. So that's basically where we are. We don't really know what was said. And Street has since, what, written a declaration or something in which he says it's 99 percent sure that this is what happened? Yes. He did. We found him during the Federal habeas proceedings. He has since passed away. Is that correct? I had noticed that when I was doing some research. He was apparently killed in an accident a couple of years ago. What I would say is if we really needed to sort this out, that there should be a hearing because there was never one in the State courts. But even going by what the prosecutor herself is admitting in this opposition, he told her at least that there was this specific incident when he was cleaning his motorcycle and he might have lost it then. Now, even if he is qualifying that. He said that. He said that. She didn't quite say that. She said he possibly could have. I mean, he said, as I understand it, in this written document, that there is something he specifically remembers, which is that at some point he took it off and put it down somewhere in the right time frame. I mean, he doesn't know as to whether he put it or he actually left it there. And that is different evidence. And that, I would think, would be exculpatory, even if not definitive. But it's not – there's no finding as to whether he actually told that to the prosecutor. There wasn't – the State courts didn't reach that issue because they said, you know, even if the version that he gave in the PSR was true, it wasn't material, which was unreasonable. So they didn't reach that part. What I'm saying is even going by what the prosecutor is saying, she is saying that he told her at some point when they were talking before the trial that it was lost, and specifically about this incident with the motorcycle. In a case where the whole issue is, you know, was this ring stolen or was it lost? What is the record of what she says he told her? It's at EOR 554. In the opposition to the motion for a new trial, is that where it is? Yes. Okay. Go ahead. Is there anything in the record that tells us where he was washing the motorcycle – where he might have been washing his motorcycle? Is it anywhere close to the flower bed where Ms. Taylor said she found the ring? That's not clear from the record. I mean, presumably he was washing it outside somewhere, but we don't know if it was – But we assume it's at least in the same complex. That's a reasonable assumption to make. Does the record reflect how many apartments are in this complex? I'm not sure that it does. There's an indication that it's a fairly large complex. You know, but this case depends upon it. As the prosecutor is presenting this case to the jury, they're arguing emphatically that the only reasonable conclusion you can draw from this evidence is that this ring was stolen and that it was not lost. This is a point the prosecutor is making over and over again in her closing argument, that as I cited in the opening brief on pages 29 and 30. You know, the defense actually presented a witness, Sharon Taylor, who said that she had been lost, and the prosecutor's response to that is, she's lying. You know, she's making this up because, you know, she used to date Mr. Comstock, and she's never seen the ring before in her life. The jury convicted him. He was sent to prison for 10 to 25 years. And all the while, they never – they never knew that, you know, he had made this statement to the prosecutor before the trial. Again, even – In the opposition to the motion for retrial, it would seem that if you took it as the truth, it might really not have been material, don't you think, given what he did say at trial, because it was what he – what she said he said was, as to whether it was possibly lost at the ridge, he paused thoughtfully and responded that, well, anything is possible, and it's possible he could have taken off the ring while working on the motorcycle. But in all reality, that would not have happened since the ring was so important to him, and further, that it did not happen. That's what she says, but not under oath and not with any fact finding by anybody that that, in fact, is what he said. And it's different than what he said he said. So – but if you thought it was what she said he said, then would there be a Brady violation? Yes. I mean, this is – this is still, even if it doesn't direct – if it doesn't absolutely prove that the ring was lost, it's at least impeachment information. But how is it different from what was said at trial? At trial – Somebody said, is it possible you lost it, and he said, I don't know, or something like that. I mean, he insisted that he didn't fall out of his pocket and he didn't drop it. But is it possible you lost it? I don't know. If it were really not clear at the trial whether the ring was stolen or lost, Mr. Comstock wouldn't have been convicted. The way that this was presented by the prosecutor, and the Supreme Court's cases emphasize that we need to look at what the prosecutor herself is telling the jury. She's saying, you know, looking at his testimony, the only reasonable conclusion you can draw is that it was – it was not lost. And if you look at what he's actually saying, I mean, it's true, he doesn't definitively know that there was, you know, a theft that took place, but he talks in some detail about how the ring is his prized possession, how he kept it in a special case, how he rarely ever took it out of that case, how he was very careful with it. He had no recollection of losing it, and the fact that Mr. Comstock had been in his apartment before the ring went missing, I mean, particularly the claim that he had no recollection of ever losing the ring outside of the apartment. He has said about him being in there, he said he wasn't there, last time he was there was before the ring went missing. He mentioned, I mean, Mr. Comstock was the apartment handyman. It comes out that the last time he was there was before the ring went missing. I think he says it was a couple of months before it went missing. Right. A couple of months before, so therefore, he wasn't there at the time. As far as he knows, he could have maybe come in, I guess he had a key, I'm not sure, but as far as he knows he was there, he wasn't there before he was there, last there before the ring, just before he last saw the ring. The point of the problem here, what's odd about this case is that the evidence is so weak to begin with that it's kind of hard to figure out what was, what would have made it any weaker. It's weak evidence as to the theft. I agree with that, but that's all the more reason to find that the Brady, the Brady violation is material. I mean, it's really odd to defend against a Brady violation by saying, well, there was never much of a case to begin with. Clearly, this jury believed that there was enough to convict him, and they believed it not just because of the testimony they heard, but because of what the prosecutor was telling them over and over again. So we have to now defend against that by pulling a 180-degree reversal and saying, oh, we don't know what happened at the trial. I think that's an indication that there's something seriously wrong here. I would like to reserve the rest of my time. Thank you. Good morning. Vic Schulze for the Attorney General and the Warden. This case, more than a lot of other cases, is going to turn on the fact that this is a 2254 case. As you know, this is not a direct appeal. And we have a deferential standard. If Mr. Streeter, Streeter, is that his name? Street. Street's own account was correct. Then it seems to me, as to what he told the prosecutor, then it seems to me there was both exculpatory and impeachment evidence, i.e., that he did at some particular time take this ring off and put it down outside while at a particular time for a particular – in a particular circumstance for a particular reason and may not have put it back on. The prosecutor says that isn't really what he told her. And nobody's ever resolved that. So how can we say that? The district court judge, Judge Hicks-Below, laid out the entire statement that Street made to the Division of Parole and Probation. The way I read the statement is that Street is talking about two different incidents. He lost the ring in a prior incident, and as far as the current – and he apparently got it back. And as far as the current incident goes, he was repeatedly asked at trial, did you lose it? And his answers fluctuated between, I don't know – I'm paraphrasing. I can't say. He was – he was – it wasn't unequivocal. He had absolutely no knowledge. It's notable that when he was asked by defense counsel – Well, the prosecutor certainly argued that he was – that he was definitive. Well, when he was cross-examined by defense counsel at trial, Street was asked – and there was no objection, and it's strange testimony and strange questioning. The defense counsel asked him specifically to speculate, could you have lost the ring outside? And he said, I don't know. What the Nevada Supreme Court in this case said is that the statement given to parole and probation wasn't materially inconsistent with his trial testimony, because again, as I've argued, I think, at length in my briefing, it's speculation. There's no fact here. Is your position that we should forget about what the prosecutor says he said and take what Streeter says he said? I think you have to – because this is a Brady claim, you have to compare Street's testimony at trial and the statement he made to the division of parole and probation and ask the same – And forget about what the prosecutor says he said. I think you have to look at the evidence of this case. And I think you – because it's a – You're not answering my question. Okay. Are you agreeing that we should not concern ourselves with a prosecutor's version in the opposition to the motion for a new trial and simply look at Streeter's statement in the PSR? Yes. Okay. Well, I'm not going to go into that because Street's statement that was quoted by Judge Hicks below and was laid out by the Nevada Supreme Court in its order, Street's statement, as I read it, says there was a prior circumstance when I lost the ring, which would be irrelevant. That doesn't add any facts to what we're talking about here. The question here is, this time, did you lose the ring? And the answer is, I don't know. He says exactly the opposite. Excuse me. I'm sorry? He says exactly the opposite. He says, I can remember a time prior to the ring turning up missing. Exactly. Well, yes, of course it was prior to the time turning – the ring turning up missing. And I think the way I read that statement is he remembers a time in a prior incident when the ring turned up missing and he retrieved the ring. Well, if he didn't remember before he got back on, then it would have been lost  the second time. So he obviously is not talking about some other incident in which he left it there. I don't agree with your reading, Judge. I think what he – I think he's talking about two different incidents in the statement because he said a prior incident, not this incident. Well, if he didn't put the ring back on the first time, then he wouldn't have had it the second time. So that can't be it. But we don't know that because he must have retrieved the ring for the ring to have been lost the second time. I don't think you can read that that precisely. He just says, I remember a time prior to the ring turning up missing. Well, the ring doesn't turn up missing until the officer calls him and says, are you the owner of a ring like this? He says, yeah. He says, it's in my bedroom. It's back in the clamshell. Right. And he says, would you go back there and take a look and make sure it's there? And he goes back and says, holy Toledo, where is it – where is the thing? That's correct. You're right. So that's not inconsistent with this. If he had written this statement out and had given this to the officers or the prosecutor prior to trial, this surely would have been Brady information, right? If he had written this statement out and they had had – the police had had this in their possession prior to trial under Brady, they would have had to have turned this over to the defense. Only if it's inconsistent with his trial testimony. Why isn't it just Brady information? How – you don't have to wait – you don't wait until the end of the trial to decide whether it's Brady information. They've got a right to ask you about the motorcycle. I understand that. But the problem in this case from the standpoint of Brady is Brady has to rely on specific facts. And everything in Street's trial testimony and in this statement is speculation. The way I read these statements – It is not speculation. He makes a definite statement here about something that happened. My reading of that is that that occurred – that was a prior incident, not this incident. Well, we disagreed with that and thought that your reading was unreasonable. Would you lose? I don't know. It's an interesting question. I don't know. It's an interesting question.  baseball pitcher named Andy Pettit. And Andy Pettit claimed to have heard Roger Clemens make a comment about using the drugs. And on cross-examination, Andy Pettit admitted that he might have misheard what Roger Clemens said, and then Roger Clemens was later acquitted. So raising doubt as to a key fact can have big consequences in a trial. And I'm wondering, why isn't that the same here? Being unfamiliar with the trial, Your Honor, I would say that in order for something to constitute Brady material, it has to be factual. And all we ever get out of street is, I don't know, maybe, it could have been, I might have lost it, I simply don't know. But why isn't that material? Isn't that reasonable doubt? The guy didn't know the ring was missing. He didn't call the cops and say, somebody's stolen my ring. The cop contacts him and says, have you got the ring? He says, yeah, it's in my bedroom. The cop says, would you go back and check it? He comes back and says, who's got it? I don't have it. I understand that. But street's testimony and the way I read the statement given to the Division of Parole and Probation isn't a maybe. It doesn't even amount to a maybe. It is, I don't know, because he was asked to speculate, and when asked to speculate if he could have lost the ring, he said, I don't know. He wasn't actually quite appalled by all this, and he wrote this statement and said, make sure the judge sees this. I understand that. He wasn't asked anything. But it wouldn't be the first time that a victim of crime, after the testimony, changed his mind on the quality of his own victimization. Victims recant all the time. Now, that is fair, but counsel, you're telling me that if the prosecutor in closing argument said, and ladies and gentlemen, how do you know that's true? Because Randy Street got up here and said he wasn't sure it could have been lost. Therefore, you should return a guilty verdict. But, Judge, they heard that, though. My point is the jury heard. They didn't hear what's in the statement. But they heard him say repeatedly. Not repeatedly, actually. I don't know. Actually, it wasn't repeatedly. I mean, every time he was asked, except when he was asked did it fall out of your pocket, he said no. When he was asked did you drop it, he said no. Yes. When he was asked generally, did you lose it, he said sort of in passing, I don't know. I don't know. That's correct. That's the only time he said it. Now, there were. If he had been asked where he washed his motorcycle, and he said, well, I did it outside, I did it outside, there's a spigot outside of the laundry room, and that was where Ms. Taylor said she found it in a flowerbed, that wouldn't have been material to anything? The problem with it, maybe the problem with the problem with the theory is that the other handyman also took the stand and testified that Carter claimed he found the ring. Oh, it's not Ironclad. In a different location. Sure. Oh, there's lots of reasons to think that at least one or more people testifying here are lying. Conceitedly. But that doesn't mean it's not exculpatory in some way. The jury gets to sort all that out. They never heard it. Right. And the defense never knew that Mr. Street had indicated there was a possibility that he had taken it off while he was washing his motorcycle. Or that he did take it off while he was washing his motorcycle. And the question is, did he put it back on? The reading of the Nevada Supreme Court and my reading of the comparison between the statement given to P&P and the trial testimony is simply that there is no material discrepancy between those statements because both are speculative and the bottom line is when Streets asked, he says something may have happened, it could have happened, or I don't know if it did happen. I'm not sure what to do. I don't see that as Brady material. Counsel, I'm not sure what to do with the Nevada Supreme Court because what the Court says is we note that the State disputes the assertion in the victim's statement that he volunteered information suggesting he misplaced the ring. Well, it doesn't make a finding. It does not. It's an observation. Right. So there's no finding there as to whether Streets did say this or didn't say this. So how do we evaluate that? And the next sentence is further. So it's they've made the observation and gone on. It says, well, as long as the State disputes it, we don't have to deal with it. That can't be right under Brady, can it? I don't think — Judge Hicks made a ruling that that was not a finding. That was simply a passing statement by the State Supreme Court. Okay. So then it's worthless. I don't think — It's simply a characterization of your position and to us, at least. It's not a finding of fact. I don't think it is a finding of fact. About what Street did or didn't say. So there's nothing for us to judge on that. So we have nothing, then, from the Nevada Supreme Court on that. But what you have from the Nevada Supreme Court is the statement laid out in their opinion. The statement's laid out there, and Judge Hicks also laid the statement out. Well, that would be the next sentence is that Comstock can't demonstrate that the allegedly withheld evidence was either exculpatory or material. Right. And that's what I'm — that's why I'm asking you, where did Comstock wash his motorcycle? We don't know. I don't know. Was it near the flowerbed where Ms. Taylor said she found it? Don't know. If it's on the opposite end of the thing, then — then, you know, the jury may not have any reason to believe Ms. Taylor. Right. And Comstock gets convicted. But that seems to me to be a material question, and it seems to be one that the defense probably should have had an opportunity to ask. I know you're over time, but I have one quick question for you. Judge Bivey asked the counsel for Comstock if he knew the source upon which the statement of Mr. Street. Do you know? Is there a recording or anything that — I don't think, Judge. I don't think it's ever been established. Is Ms. Erickson still in the office, in the AG's office? Erickson — Or the prosecutor in this case. At one time, I believe — The prosecutor would have been the Washoe County D.A. It's not our office. It's the Reno D.A.'s office, I think. Okay. I don't think this was us. So you're representing that you don't know of any such document. I do not. I'm not aware. And I agree with counsel. It's not just that it's not in the record, but you don't know of such a thing. Yeah, that's correct. I agree with counsel. I don't know the form. Okay. Thank you. Thank you very much. Thank you. I'll give you a minute in rebuttal. Thank you. A minute. Our allegation in these habeas proceedings has always been that what Street said in the PSR is what he told the prosecutor. The State didn't dispute that in their answer. They didn't dispute it in the briefing, and they don't seem to be disputing it now. So I think the Court can accept that this is what — But essentially there — I mean, aside from whether a finding was made, she never actually made a statement under oath at all. No. She just made a representation in a brief. She made a representation — So the only thing in the record on this is this document by — which is also not under oath, I guess, but it was given to the prosecutor — to the probation officer in writing. Yes. There is a subsequent declaration, which was — Oh, there is a declaration. Okay. But, you know, if — you know, so if this were introduced at the trial, and if the best the prosecutor could do is what the AG is doing now and basically saying, well, maybe he didn't, maybe he lost it, maybe he didn't, it's all speculative, there's simply no way that a jury could have concluded beyond a reasonable doubt that the only possible conclusion was that the ring was stolen. Well, again, it seems to me the only reason that that works is because you had such equivocal evidence to begin with, right? In other words, you had — what you had to begin with was nobody ever saw the thing taken, and nobody actually knew anybody ever broke in, and he said from the beginning that he didn't really know what had happened to it. And so you have — I mean, this may be a small thing, but it's a small thing, you know, tipping what's already pretty flimsy to begin with. I mean, there are — right? I mean, that's the odd situation here. I mean, in other words, this doesn't seem like much because he doesn't say this is what happened, but it's more than was there, and what was there was pretty flimsy to begin with. I think the expression is straw that broke the camel's back. Yeah, right. I would agree. I mean, I would agree with the argument that this wasn't much of a case to begin with. But what the Supreme Court tells us in Kiles v. Whitney is the best way to assess the likely effect of a Brady violation is to take the word of the prosecutor. And the prosecutor certainly isn't presenting this case to the jury as a case where we don't know what happened. She's telling them this is what happened and this is the very thing that would have disproved that. And that this guy, Street, said that he didn't lose it, which isn't quite true. He didn't really say he didn't lose it, but that's what she told him. Yes. All right. Thank you very much. Thank you, Your Honor. The case of Comstock v. Humphreys is submitted and will go to United States v. Harris.
judges: Berzon, Bybee, Owens